IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ZACHARY CHARLES BAUGHMAN, individually, GEORGE SCHMIDT, individually, and on behalf of all others similarly situated,

Plaintiffs,

v.

BOTTOM LINE CONCEPTS, LLC, a Florida company,

Defendant.

Case No. 1:23-CV-21862-DPG

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

Defendant Bottom Line Concepts, LLC ("BLC" or "Defendant") moves to dismiss Plaintiffs Zachary Charles Baughman ("Baughman") and George Schmidt's ("Schmidt," together with Baughman, "Plaintiffs") Class Action Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) based on a facial attack to the Complaint and 12(b)(6) for failure to state a claim upon which relief can be granted.

I.   INTRODUCTION

This case is yet another telemarketing lawsuit that seeks to darken this Court's doorstep without alleging a concrete injury in fact to establish Article III standing. Recent cases in this Circuit and District have made clear that merely alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") is not enough to establish Article III standing, and that is exactly what has happened here. Because Plaintiffs have not (and likely cannot) allege a sufficient injury caused by BLC that would give rise to Article III standing, the Complaint must be dismissed. And, because the Complaint fails to allege any prospect of **future** harm, the portions of the claim seeking injunctive relief must also be dismissed.

To the extent the Court looks beyond the threshold issue of Article III standing (it should not), the Complaint is also deficient for failing to adequately plead either direct or vicarious liability. The Complaint seeks to hold BLC liable for alleged calls made by someone else. The Complaint is

1

riddled with references to non-party ERC Concepts, and while failing to include them in this action, casually seeks to hold BLC liable for calls made by someone else. But Plaintiffs cannot partially plead direct liability and partially plead vicarious liability to make a whole Complaint; rather, they must adequately plead direct and/or vicarious liability independently. Because they do neither, all claims must be dismissed.

For either of these reasons, the entire Complaint should be dismissed.

## II. SUMMARY OF FACTUAL ALLEGATIONS

The Complaint is long on conclusions but short on facts. Stripped of the self-serving allegations about why telemarketing is generally bad (*see* pp. 2-3), and general comments from the internet about a telephone number that is not otherwise connected to BLC (*see* pp. 4-6), the only relevant facts the Complaint alleges are the following:

- Plaintiff Baughman received a single call from 786-936-1984, which rang only once and went to voicemail. *See* Compl. at ¶ 28.

- The voicemail did not identify or reference BLC. *See id.*

- When someone (not necessarily Plaintiff Baughman) called 786-936-1984, the company identifying itself was allegedly a non-party to this action—ERC Concepts. *See id.* at ¶ 30.

- As a result of that single call (which rang once and went to voicemail), Plaintiff Baughman was purportedly harmed "in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of his phone line and memory on the phone." *See id.* at ¶ 31.

- Plaintiff Schmidt received a call from 650-780-3601 and a voicemail was left that did not identify or reference BLC. *See id.* at ¶ 35.

- Plaintiff Schmidt received four additional calls, which were answered, from someone purporting to be from non-party ERC Concepts. *See id.* at ¶¶ 36-39.

- As a result of the calls at issue, Plaintiff Schmidt was purportedly harmed "in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of his phone line and memory on the phone." *See id.* at ¶ 41.

## III. LEGAL STANDARD

### a. 12(b)(1) Standard

To demonstrate Article III standing, "a plaintiff must show (i) that he suffered an injury in

fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). As bluntly stated by the United States Supreme Court, "[n]o concrete harm, no standing." *Id.* at 2200. Even though a legislative body might have created a private right of action of a particular statutory violation, "a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 997 (11th Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016)). A "bare procedural violation, divorced from any concrete harm," does not satisfy the injury-in-fact requirement of Article III. *Id.*

Whether a party has Article III standing is a threshold jurisdictional issue that courts must address before reaching the merits of a case. *See, e.g.*, *Kawa Orthodontics, LLP v. Sec'y, U.S. Dep't Treas.*, 773 F.3d 243, 245 (11th Cir. 2014) (discussing threshold nature of standing). "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy. . . . The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), as revised (May 24, 2016).

A motion to dismiss for lack of Article III standing is properly brought as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See Malgeri v. Vitamins Because LLC*, 19-22702-CIV, 2022 WL 16635274, at *6 (S.D. Fla. Sept. 30, 2022) (noting Article III standing challenges are governed by Rule 12(b)(1)). Under Rule 12(b)(1), a defendant may attack subject matter jurisdiction in one of two ways, "facially or factually." *Id*. A facial challenge looks merely at the four corners of the Complaint, whereas a factual challenge (which can be raised at any time) considers matters outside the pleadings. *See id.* (discussing difference between facial and factual challenge) (internal citations omitted).

   b.  **12(b)(6) Standard**

Rule 12(b)(6) provides for dismissal where a plaintiff fails to sufficiently plead a claim for relief. A "bare assertion" and "conclusory allegation[s]" will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). A "formulaic recitation of the elements" of a claim also fails to meet the requisite pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, Plaintiff must "include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc.*

*v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012) (abrogated on other grounds *by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022)). "Conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" under Rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."). Where (as here) a statute upon which a claim is based is unconstitutional, dismissal under Rule 12(b)(6) is also appropriate. *See Harris v. Mex. Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).

IV. **ARGUMENT**

    a. **The Complaint must be dismissed because Plaintiff lacks Article III standing with regard to damages.**

Recent cases in this District and Circuit confirm that the allegations at issue in the Complaint are insufficient to establish Article III standing.

The seminal case regarding standing in telemarketing cases is *Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019). *Salcedo* held that a single text message does not "state a concrete harm that meets the injury-in-fact requirement of Article III." *Id.* at 1172. Often overlooked, however, is *Salcedo*'s other critical holding:

**F. Quality, Not Quantity**

> To be clear, we are not attempting to measure how small or large Salcedo's alleged injury is. Article III standing is not a "You must be this tall to ride" measuring stick. "There is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be." *Saladin v. City of Milledgeville*, 812 F.2d 687, 691 (11th Cir. 1987). Our assessment today is thus qualitative, not quantitative. We have assessed how concrete and real the alleged harm is, *Spokeo*, 136 S. Ct. at 1548, and we have concluded that it is not the kind of harm that constitutes an injury in fact. Some harms that are intangible and ephemeral may do so, but Salcedo's allegations of the harm he suffered from receiving a single text message do not.

*Id.* at 1172–73.

Following *Salcedo*, courts in this District began dismissing telemarketing cases left and right based on lack of Article III standing, even when Plaintiff received as much as ***five*** purportedly unsolicited communications. *See, e.g.*, *Eldridge v. Pet Supermarket Inc.*, 446 F. Supp. 3d 1063, 1070 (S.D. Fla. 2020) ("In light of *Salcedo*, the Court must find that Plaintiff's alleged injuries—

invasion of privacy, intrusion upon seclusion, and wasted time from receiving five unauthorized text messages over a three-month period—do not state a concrete injury-in-fact."); *see also Mittenthal v. Fla. Panthers Hockey Club, Ltd.*, 472 F.Supp.3d 1211, 1216, 1225 (S.D. Fla. July 14, 2020) (Altman, J.) (remanding for lack of standing with "around 10" text messages); *Grigorian v. FCA US, LLC*, 18-24364-CIV, 2019 WL 8584615, at *1 (S.D. Fla. Dec. 13, 2019), aff'd, 838 F. App'x 390 (11th Cir. 2020) ("The Court finds that Plaintiff lacks standing under Article III. *See Salcedo v. Hanna*, 936 F.3d 1162 (11th Cir. 2019)").

A year after *Salcedo*, the Eleventh Circuit held that Courts dismissing cases involving telephone calls and text messages for lack of Article III standing based on *Salcedo* were getting it right. In *Grigorian v. FCA US LLC*, 838 F. App'x 390 (11th Cir. 2020), the Eleventh Circuit made express what was implied in *Salcedo*: you need more than simply receiving calls or texts to establish Article III standing. Specifically, the Eleventh Circuit held:

> Here, Grigorian has provided facts that she lost personal time listening to the voicemail. She has not, however, provided facts to show that the single prerecorded voicemail rendered her phone unavailable to receive legitimate calls or messages for any period of time. Without more, we cannot say that she met her burden to show she had standing, particularly in light of this Court's holdings in *Palm Beach Golf Center* and *Salcedo*.

*Id.* at 394.

Over the past two years, Courts have continued to dismiss TCPA cases relying on *Salcedo* and *Grigorian*. *See, e.g.*, *Frater v. Lend Smart Mortgage, LLC*, 22-22168-CIV, 2022 WL 4483753, at *4 (S.D. Fla. Sept. 27, 2022) ("The fact that the Plaintiff cannot identify a single specific harm she allegedly suffered, beyond offering a conclusory recitation of harms like 'annoyance,' 'aggravation,' and 'wasted time,' means that she has still failed to clear the qualitative floor for a concrete injury and, therefore, she (and the putative class) lacks standing to bring a claim under [a telemarketing statute]."); *Colceriu v. Barbary*, 543 F. Supp. 3d 1277, 1281 (M.D. Fla. 2021) ("Yet, the Complaint does not allege that Plaintiff's time was wasted or the degree to which it was wasted by Defendant's actions or that Plaintiff suffered an injury related to an "invasion" of her social media feed by the profiles she followed. Moreover, it is not clear that a mere waste of time, voluntarily expended, could suffice to establish injury-in-fact."); *Garcia v. FCA US LLC*, 1:20-CV-22191-JEM, 2021 WL 7709961, at *3 (S.D. Fla. May 28, 2021) ("Because Plaintiff failed to allege facts demonstrating that the prerecorded message rendered her phone unavailable to receive

legitimate calls or messages, the Amended Complaint suffers from the same defect as the pleading in Grigorian. Accordingly, dismissal is warranted.")

In *Muccio v. Glob. Motivation, Inc.*, 22-81004-CIV, 2022 WL 17969922 (S.D. Fla. Dec. 27, 2022), the Court dismissed TCPA claims under *Salcedo* and its progeny, holding:

> Plaintiff attempts to distinguish his "injury" by observing that he received five unwanted text messages as opposed to the one unsolicited text message received by the plaintiff in *Salcedo*. That factual distinction does not change the legal conclusion under Article III on the facts alleged. As the Eleventh Circuit in *Salcedo* made clear: " 'There is no minimum quantitative limit required to show injury; rather, the focus is on the qualitative nature of the injury, regardless of how small the injury may be.'". In other words, the question is how "concrete and real the alleged harm is," *i.e.*, not on the mere number of unwanted communications. Id. Plaintiff also suggests that he has Article III standing because Defendants failed to maintain certain policies associated with unsolicited calls and also failed to train personnel in the use of a do-not-call list. Those policy-oriented allegations do not tip the standing scale in favor of Plaintiff's standing; Plaintiff still must allege a concrete harm suffered as a result of receiving unsolicited messages from Defendants, and he has not—either in the receipt of the messages or in Defendants' alleged failure to maintain written policies.

*Id.* at *3 (internal citations omitted).

Here, Plaintiffs' "harms" are indistinguishable from the "harm" alleged in *Salcedo*. The alleged receipt of one to five telephone calls (none of which are directly connected to BLC) is an "isolated, momentary, and ephemeral" event. *Salcedo*, 936 F.3d at 1171. The plaintiff in *Salcedo* and Plaintiffs here both alleged that the text messages invaded their privacy and annoyed them. *See* Compl., ¶¶ 31, 41; *Salcedo*, 936 F.3d at 1167 and 1172. Neither plaintiff alleged (or could have alleged) that the telephone calls cost them any money or actual damages. *Id.* at 1168. Neither plaintiff alleged any "objectively intense interference" with his private space, infringement of real property rights, or the defendant's exercise of complete dominion over his cell phone, even for a limited time. *Id.*, at 1171-72; *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 921 (11th Cir. 2020) (holding that "a party does not have standing to sue when it pleads only the bare violation of a statute"); *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2197, 210 L. Ed. 2d 568 (2021) (holding that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right"); *Drazen v. Pinto*, 41 F.4th 1354 (11th Cir. 2022) (refusing to certify TCPA class action because the proposed class would include consumers who received one text message,

which is improper because such consumers lack standing).[1]

Ultimately, the alleged harms deemed insufficient to confer standing in *Muccio*, *Frater*, and *Salcedo* are the exact harms Plaintiff has alleged that he suffered as a result of the subject messages here. These allegations are insufficient to confer standing. Plaintiff's Complaint (all Counts) should therefore be dismissed.

### b. The Complaint must be dismissed because Plaintiff lacks Article III standing with regard to injunctive relief.

Plaintiffs separately lack Article III standing to seek injunctive relief in any event, which requires that they establish "continuing, present adverse effects" traceable to Defendant's conduct. *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974); *see also Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1251–52 (S.D. Fla. 2019) (dismissing request for injunctive relief in TCPA case for lack of standing where there was nothing suggesting possible future injuries). Here, Plaintiff Baughman alleged he received a single call and Plaintiff Schmidt alleged he received five calls over an eight-day period, but neither Plaintiff alleges any continuing or possible future injury. And of course, because Plaintiff "lacks [Article III] standing to bring the asserted claims on his own behalf" against Defendant, he also "lacks standing to represent a class asserting such claims." *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, at *4 (M.D. Fla. May 26, 2009).

The case of *Zononi v. CHW Group, Inc.*, 22-CV-14358, 2023 WL 2667941, at *5 (SD Fla Mar. 7, 2023), is instructive. In *Zononi*, in response to similar allegations of injunctive relief in the operative pleading, the Court held:

> Here, Defendant argues the FAC fails to allege facts that show a likelihood of future injury, and the request for injunctive relief should therefore be dismissed (DE 13 at 17-18). The Court agrees. After reviewing the FAC, the Court finds no allegations to suggest a threat of future injury, other than the mere fact of past injuries. Without more, past injuries alone do not suffice. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief."). The Court notes that Plaintiff submitted no argument to oppose Defendant's request for dismissal of the injunctive relief request (DE 15). As such, the Court recommends the Motion be granted as to all requests for injunctive relief. *See, e.g., Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1249 (S.D. Fla. 2019) (dismissing prayer for declaratory and injunctive release based upon failure to allege facts showing threat of imminent future harm).

---

[1] The Eleventh Circuit has agreed to rehear *Drazen en banc*. 61 F.4th 1297 (11th Cir. 2023).

The Court should reach the same conclusion here and dismiss the Complaint as to all requests for injunctive relief.

### c. Plaintiffs' Complaint implies both direct and vicarious liability, but fails to allege sufficient facts to support a claim under either theory.

Plaintiffs' claims independently fail because they do not plead sufficient facts supporting a plausible theory of liability under the TCPA. Courts have recognized two potential theories of liability under the TCPA: (i) direct liability; and (ii) vicarious liability. *See Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F. App'x 678, 679 (9th Cir. 2014)). Thus, to properly plead a telemarketing claim, "the person must either (1) **directly make** the call, or (2) have an **agency relationship** with the person who made the call." *Pascal v. Agentra*, *LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (emphasis added) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). As to the former, it is well accepted that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" telemarketing calls and that to "initiate" in this context means to "physically place" a phone call. *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (citing *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)); *accord Grant v. Regal Auto. Grp., Inc.*, 2020 WL 8254283, at *7 (M.D. Fla. July 30, 2020), *report and rec. adopted*, 2020 WL 8224838 (Sept. 29, 2020). This rule applies equally to claims brought under the TCPA's DNC Registry provision, as invoked here. *See, e.g.*, *Donaca*, 303 F.R.D. at 394-96.

i. <u>Plaintiffs do not adequately allege direct liability.</u>

Thus, courts routinely dismiss direct TCPA liability claims at the pleadings stage that, like Plaintiffs', lack sufficient factual allegations demonstrating the defendant actually "initiated" the calls at issue in the sense of "***tak[ing] the steps necessary to physically place*" a call**. *Sheski*, 2020 WL 2474421, at *2-4 (dismissing where the plaintiff did not allege facts supporting direct liability) (emphasis added) (quoting *In re Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. at 6583 ¶ 26). "Merely alleging that [a defendant] 'made' or 'initiated' [a] call"—like Plaintiff does—"is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC*, 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Here, neither Plaintiff alleges who physically placed the at-issue calls. Rather, Plaintiffs merely conclude that they received calls "from" Defendant. *See* Compl. ¶¶ 28, 35-39. In contrast to

8

this allegation, Plaintiffs imply throughout their Complaint that someone other than BLC placed the calls to them, consistently referencing non-party ECR Concepts. *See id.* ¶¶ 30, 36, 37, 38, 39. They do not allege, for example, that: (i) the phone numbers at issue belong to Defendant; (ii) anyone identified themselves as an employee or agent of Defendant other than after calls were transferred; or (iii) the substance of the call with the sole entity alleged to be affiliated with BLC. These omissions are fatal. *See, e.g.*, *Hirsch v. Lyndon S. Ins. Co.*, 2019 WL 5110622, at *6 (M.D. Fla. June 7, 2019), *report and rec. adopted sub nom.*, 2019 WL 8370863 (Aug. 6, 2019), *aff'd*, 805 F. App'x 987 (11th Cir. 2020) (dismissing where plaintiff was "attempting to impose liability on Defendants for countless calls made throughout the United States … without alleging who made the calls"); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (dismissing where plaintiff "provide[d] no details specifying how [plaintiff] knew that [defendant] in fact placed these calls" and holding that "[a]t the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that [physically] made the calls" at issue) (citing *Scruggs v. CHW Grp., Inc.*, 2020 WL 9348208, at *10 (E.D. Va. Nov. 12, 2020)).

In sum, Plaintiffs' conclusory allegations fall far short of satisfying federal pleading standards. Because they do <u>not</u> allege that Defendant itself (not some third party) actually <u>physically</u> made the calls at issue, this Court should follow the vast weight of applicable authority cited above holding that such deficient claims should be dismissed under Rule 12(b)(6), and do so here.

ii. <u>Plaintiffs fails to adequately plead vicarious liability.</u>

Plaintiffs likewise fail to plausibly allege vicarious liability under the TCPA. Vicarious liability cannot be casually pled; rather, courts uniformly require plaintiffs to meet a certain pleading threshold. Indeed, vicarious liability in any context requires a special relationship between a principal and an agent. *See* Restatement (3d) of Agency ("Restatement") § 1.01, cmt. c ("[T]he concept of agency posits a consensual relationship in which one person, to one degree or another or respect or another, acts as a representative of or otherwise acts on behalf of another person with power to affect the legal rights and duties of the other person."); *see also Green v. United States*, 700 F. Supp. 2d 1280, 1301 (M.D. Fla. 2010), *aff'd*, 418 F. App'x 862 (11th Cir. 2011) (applying Restatement (Third) Agency § 1.01). This requires "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss, sufficient facts must be offered to support a reasonable inference that

an agency relationship existed.'" *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *5 (N.D. Cal. Mar. 28, 2018) (citation omitted).

Courts routinely dismiss TCPA claims premised on vicarious liability at the pleadings stage where, as here, the plaintiff fails to allege sufficient facts establishing an agency relationship with or control over a purported agent. *See*, *e.g.*, *Hirsch*, 2019 WL 5110622, at *6 (dismissing, noting that the FCC "has explicitly rejected a theory of liability under the TCPA against the seller of a product for telephone calls marketing that product absent an agency or similar relationship between the seller and the caller"); *Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where plaintiff's "allegations of vicarious [TCPA] liability [we]re conclusory in nature"); *Sheski*, 2020 WL 2474421, at *4 (same). This also dooms the Complaint.

Here, Plaintiffs merely employ various legal buzzwords, without supporting facts, to vaguely suggest that Defendant's "agents" placed some or all of the at-issue calls. But Plaintiff does not allege any facts supporting a plausible inference that Defendant directed or controlled the calling party's conduct, as is required to plead actual agency. *See*, *e.g.*, *Linlor*, 2017 WL 5885671, at *3. Nor do Plaintiffs allege that Defendant did or said anything to them or that they **relied** on such actions or statements to their **detriment**, as is required to plead apparent authority. *Id*. Therefore, to the extent they were attempting to allege vicarious liability, Plaintiffs' Complaint should be dismissed. *See, e.g.*, *Abramson* and *Hirsch*, *supra*. And because Plaintiffs' individual claims do not survive dismissal under Rule 12(b)(6) for the many reasons above, the class allegations must also be dismissed. *See, e.g., Henley v. Turner Broad. Sys., Inc.*, 267 F. Supp. 3d 1341, 1357 (N.D. Ga. 2017) (citing various cases).

V. **CONCLUSION**

For the reasons above, BLC respectfully requests the Court dismiss the Complaint in its entirety.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Pursuant to Local Rule 7.1(a)(3), the undersigned hereby certifies that counsel for Defendant conferred with Plaintiffs' counsel, Avi Kaufman, telephonically on June 30, 2023 but was unable to agree on the relief sought herein.

By: *s/ Yaniv Adar*
Yaniv Adar, Esq.
Florida Bar No. 63804

DATED: June 30, 2023.

Respectfully submitted,

**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: 305-374-0440

By: *s/ Yaniv Adar*
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
eservice@markmigdal.com

*Counsel for Bottom Line Concepts, LLC*

## CERTIFICIATE OF SERVICE

I hereby certify that I filed the foregoing document (including any attached exhibits and documents) electronically on the Court's CM/ECF docket on June 30, 2023, which served same electronically upon all counsel of record.

*s/ Yaniv Adar*
Yaniv Adar, Esq.
Florida Bar No. 63804